UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YAHAIRA YAMIL NUNEZ, | |
| Plaintiff, | CIVIL ACTION NO. 3:19-CV-00877 |
| v. | (MEHALCHICK, M.J.) |
| ANDREW M. SAUL, Commissioner of Social Security,[1] | |
| Defendant. | |

**MEMORANDUM OPINION**

Plaintiff Yahaira Yamil Nunez brings this action under sections 205(g) and 1631(c) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c) (incorporating 42 U.S.C. § 405(g) by reference), for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Act. (Doc. 1). The matter was referred to the undersigned United States Magistrate Judge to prepare a report and recommendation pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b). The parties thereafter consented to the undersigned's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1), to adjudicate all proceedings relating to this action. (Doc. 9).

For the following reasons, the Commissioner's determination to deny Nunez benefits

---

[1] The Court has *sua sponte* amended the caption to replace former Acting Social Security Commissioner Nancy A. Berryhill with her successor, Social Security Commissioner Andrew Saul. *See* Fed. R. Civ. P. 25(d) (providing that when a "public officer who is a party in an official capacity . . . ceases to hold office while [an] action is pending," the "officer's successor is automatically substituted as a party").

is **VACATED** and the case is **REMANDED** to the Commissioner.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

In May 2016, Nunez filed applications under Titles II and XVI, claiming disability beginning October 1, 2013, due to depression, anxiety, panic attacks, posttraumatic stress disorder (PTSD), and back pain. (Doc. 1, at 2; Doc. 5-7, at 18). The Social Security Administration initially denied the applications in August 2016, prompting Nunez's request for a hearing, which Administrative Law Judge (ALJ) Scott M. Staller held on December 11, 2017. (Doc. 1, at 2). In an April 3, 2018 written decision, the ALJ determined that Nunez is not disabled and therefore not entitled to benefits or income under Titles II or XVI. (Doc. 1, at 2). The Appeals Council subsequently denied Nunez's request for review. (Doc. 1, at 3). Nunez commenced the instant action on May 22, 2019. (Doc. 1). The Commissioner responded in July 2019, providing the requisite transcripts from Nunez's disability proceedings. (Doc. 4; Doc. 5). The parties then filed their respective briefs, with Nunez raising three principal bases for reversal or remand. (Doc. 12, at 2; Doc. 13).

**II.   STANDARDS OF REVIEW**

To receive benefits under Titles II or XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1509, 416.909. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. §§ 423(d)(2)(A),

1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).[2] Additionally, to be eligible under Title II, a claimant must have been insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131.

### A. ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled, the "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now familiar five-step analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200-201 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; *see* 20 C.F.R. §§ 404.1512(a)(1), 416.912(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. §§ 404.1512(a)(1), 416.912(a)(1).

### B. JUDICIAL REVIEW

The Court's review of a determination denying an application for Title II benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at *1 (3d Cir. Dec. 20, 2019) Substantial evidence "does not mean a large or considerable amount of evidence, but rather

---

[2] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Nunez was disabled, but whether the Commissioner's determination that Nunez was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

### III. THE ALJ'S DECISION

In his written decision, the ALJ determined that Nunez "has not been under a disability, as defined in the Social Security Act, from October 1, 2013, through the date of this decision." (Doc. 5-2, at 49).[3] The ALJ reached this conclusion after proceeding through the five-step sequential analysis provided in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a).

#### A. STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If a claimant is engaging in substantial gainful activity, the claimant is not disabled, regardless of age, education, or work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. §§ 404.1572, 416.972. The ALJ must consider only the earnings of the claimant. 20 C.F.R. §§ 404.1574(a)(2), 416.974. Here, the ALJ determined that Nunez "has not engaged in substantial gainful activity since October 1, 2013, the alleged onset date," and therefore proceeded to step two of the analysis. (Doc. 5-2, at 41).

#### B. STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that is severe and meets the 12-month duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ determines that a claimant does not have an impairment or combination of impairments that

---

[3] Pursuant to the 42 U.S.C. § 423(a)(1)(a) and 20 C.F.R. § 404.131, the ALJ initially determined that "[Nunez] meets the insured status requirements of the Social Security Act through December 31, 2017." (Doc. 5-2, at 41).

significantly limits the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If, however, a claimant establishes a severe impairment or combination of impairments, the ALJ proceeds to consider step three. Here, ALJ concluded that Nunez has six severe impairments: degenerative disc disease of the lumbar spine, cervical radiculopathy, major depressive disorder, generalized anxiety disorder, and PTSD. (Doc. 5-2, at 41-42). While Nunez had been diagnosed with a prior ankle sprain, the ALJ found that condition to be non-severe because it did not cause Nunez "to have significant functional limitations in work-like activities. (Doc. 5-2, at 42).

    C.    STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 404.1526, 416.920(a)(4)(iii), 416.925, 416.926. The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairment or impairments meet a listing, then the claimant is considered disabled, otherwise the ALJ must proceed to and analyze the fourth step of the sequential analysis. 20 C.F.R. §§ 404.1520(d), 416.920(d). Here, the ALJ determined that none of Nunez's impairments, considered individually or in combination, meets or equals the severity of a listed impairment. (Doc. 5-2, at 42). The ALJ specifically considered listings 1.04 (disorders of the spine), 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders). (Doc. 5-2, at 42-44); *see* 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

D.  RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ evaluates the claimant's residual functional capacity (RFC), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers all claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)-(c). Here, Nunez alleged that her impairments caused various non-exertional difficulties, which the ALJ summarized as follows:

> [Nunez] alleges disability due to degenerative disc disease and mental health impairments. However, the results of objective and diagnostic testing do not support these allegations. [Nunez] stated that she has chronic pain in her lower back that radiates into her left leg. She testified that she worked as a nurse's aide and had to lift more than 50 pounds on a regular basis, which injured her back. She testified that the pain interferes with her daily life because she is unable to complete household chores, walk, stand, or sit for long periods. She also testified that she has developed depression and anxiety due to the frustration of her physical impairments. [Nunez]'s symptoms and limitations are inconsistent with the medical evidence and therefore the undersigned does not accept the allegations put forth by [her] with respect to these limitations.

(Doc. 5-2, at 44-45).

After weighing Nunez's written and oral statements against other evidence in the record, the ALJ found that her impairments could reasonably be expected to cause the alleged symptoms, but that her statements about the intensity, persistence, and the limiting effects of the symptoms are not entirely consistent with the medical evidence and other evidence in the

record. (Doc. 5-2, at 44-45). The ALJ then went on to detail Nunez's medical records and treatment history. (Doc. 5-2, at 45-47). Considering all evidence in the record, the ALJ determined that Nunez "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)," except she can (1) "frequently climb ramps, stairs, ladders, ropes and scaffolds"; (2) "frequently stoop, kneel, crouch or crawl"; (3) "understand, remember and carry out simple instructions"; (4) "make judgments on simple work-related decisions"; and "occasionally interact with the public, coworkers and supervisors in a routine work setting." (Doc. 5-2, at 44).

### E. STEP FOUR

Step four requires the ALJ to determine whether the claimant had, during the relevant period, the RFC to perform the requirements of his or her past relevant work regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. §§ 404.1560(b), 416.920(a)(4)(iv). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed it or as ordinarily required by employers throughout the national economy. *Garibay v. Comm'r Of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform his [or her] past relevant work despite his limitations, he [or she] is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)); *see also* 20 C.F.R. § 416.920(a)(4)(iv). Here, after comparing Nunez's RFC to the demands of Nunez's past relevant work as a nurse aide, the ALJ found, based on testimony adduced from a vocational expert at the administrative hearing, that

Nunez would be unable to perform such work. (Doc. 5-2, at 47-48).

    F.    STEP FIVE

At step five, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant who can adjust to other work is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Here, considering Nunez's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Nunez can perform. (Doc. 5-2, at 48-49). In making that determination, the ALJ relied on the vocational expert's testimony that Nunez was able to perform the requirements of occupations including bakery worker (conveyor line), cleaner (housekeeper), and agricultural produce sorter. (Doc. 5-2, at 49). Accordingly, the ALJ determined that Nunez was not disabled and denied her applications for benefits and income. (Doc. 5-2, at 49-50).

## IV.   DISCUSSION

Nunez submits that the ALJ erred in three significant ways, all of which attack the ALJ's RFC determination: (1) the ALJ failed to consider Nunez's limitations caused by her severe impairments of degenerative disc disease of the lumbar spine, cervical radiculopathy, major depressive disorder, anxiety disorder, and PTSD; (2) the ALJ failed to consider and made no reference to Nunez's sleep disorder and chronic headaches; and (3) the ALJ improperly discounted the opinion of Nunez's treating source. (Doc. 12, at 1-2).

The determination of an individual's RFC falls solely within the purview of the ALJ. 20 C.F.R. §§ 404.1546(c), 416.946(c); SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996). RFC means "that which an individual is still able to do despite the limitations caused by his

or her impairment(s).'" *Burnett*, 220 F.3d at 121 (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)). It reflects the most that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluative the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184 at *2. The Court's "review of the ALJ's assessment of the [claimant]'s RFC is deferential," and the "RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018); *see also Martin v. Comm'r of Soc. Sec.*, 547 F. App'x 153, 160 (3d Cir. 2013) ("We examine the ALJ's conclusions as to a claimant's RFC with the deference required of the substantial evidence standard of review." (internal quotation marks omitted)).

In assessing a claimant's RFC, the ALJ must consider all the evidence of the record and, regardless of its source, "evaluate every medical opinion . . . receive[d]." *Burnett*, 220 F.3d at 121 (internal citations omitted); *see* 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also* SSR 96-8P, 1996 WL 374182, at *2 ("RFC is assessed by adjudicators at each level of the administrative review process based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' . . . ."). Under the regulations, medical opinions are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). If a conflict exists in the evidence, "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting

*Mason*, 994 F.2d at 1066); *see also Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). It is the duty of the ALJ to explain the rationale for the weight afforded to each medical opinion, as this allows for meaningful judicial review. *Plummer*, 186 F.3d at 429 ("The ALJ must consider all the evidence and give some reason for discounting the evidence that [the ALJ] rejects." (quoting *Mason*, 994 F.2d at 1066)).

### A. THE RECORD IS DEVOID OF ANY INDICATION THAT THE ALJ CONSIDERED NUNEZ'S SLEEP DISORDER AND HEADACHES

Applying the above standard to the present record, the Court is compelled to remand this case for the sole reason that the ALJ failed to consider – or even reference – Nunez's sleep disorder and chronic headaches. Nunez testified to having trouble sleeping due to pain stemming from her severe impairments, as well as from nightmares and flashbacks about a prior tragic experience relating to her PTSD. (Doc. 5-2, at 65, 71-72). According to Nunez, she does not sleep at all about two nights per week. (Doc. 5-2, at 72). Medical records indicate that Nunez's pain and PTSD-related issues cause "sleep disturbance"; "difficulty staying asleep"; "waking episodes at night"; "changes to sleep patterns"; "abnormal sleep pattern"; "insomnia"; "difficulty sometimes with staying and asleep and sometimes with falling asleep"; and "pain [that] can awaken her from sleep." (Doc. 5-2, at 9; Doc. 5-9, at 435, 442, 448, 484, 511-512; Doc. 5-11, at 704-705; Doc. 5-12, at 817, 838; Doc. 5-13, at 772, 830, 838; Doc. 5-15, at 1041). Nunez also testified to chronic headaches, including that once a month she suffers from throbbing headaches that last from 15 to 20 minutes and remain unabated even with the use of Advil or Tylenol. (Doc. 5-2, at 75). As with Nunez's sleep issues, there is at least some documented medical support for this condition. (Doc. 5-2, at 12 (noting positive for headaches)).

While not overwhelming, the evidence of Nunez's sleep disorder and headaches tends to support her testimony concerning the existence of those conditions and the ways they might contribute to impeding her functionality, particularly given that the ALJ found Nunez has severe pain-inducing impairments and PTSD. It is unclear whether the ALJ even considered these conditions because the ALJ did not mention them in his written decision.

The Commissioner notes that Nunez "did not allege that she was disabled due to headaches or a sleeping disorder" (Doc. 13, at 12), but it is impossible for the Court to determine whether that is the basis for the ALJ's evaluation of those conditions. Notably, the Commissioner submits that the "ALJ . . . heard [Nunez's] testimony [concerning sleep-related issues and headaches] and considered it when reaching his decision." (Doc. 13, at 12). The Commissioner therefore seems to argue that the ALJ should not have considered these conditions, while at the same time arguing that the ALJ did consider these conditions. Further, the Commissioner's conclusory assertion that the ALJ considered Nunez's testimony as to these conditions appears to be based on the ALJ's broad statements that he considered all evidence and not specifically the sleep-related issues or headaches. (Doc. 13, at 12 (citing Doc. 5-2, at 38, where the ALJ stated, "[a]fter careful consideration of all the evidence," and Doc. 5-2 at 43, where the ALJ stated, "[a]fter careful consideration of the entire record")).

Considering the record as a whole, the Court finds Nunez's medical records provide, "at a minimum, 'medical evidence consisting of signs, symptoms and laboratory findings' of a medically determinable impairment." *See Melius v. Colvin*, No. CIV.A. 12-848, 2013 WL 5467071, at *3 (W.D. Pa. Sept. 30, 2013) (internal citations omitted). The record does not reflect that the ALJ ascertained whether Nunez's sleep-related issues and headaches, "in combination with h[er] other impairments, might result in any additional limitations in [her]

residual functional capacity." See *Melius*, 2013 WL 5467071, at *3. There is no discussion of "any possible . . . limitations caused by [Nunez's sleep issues or headaches] or address any potential limitations on [Nunez's] ability to work arising [therefrom] . . . ." See *Owens v. Colvin*, No. 14-CV-1037, 2015 WL 4662493, at *5 (W.D. Pa. Aug. 6, 2015).

The Commissioner relies on *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n. 2 (3d Cir. 2007), to argue that although the ALJ did not address Nunez's sleep-related issues and headaches at step two, any alleged step-two error is harmless because the ALJ went on to consider whether Nunez could perform work existing in significant numbers in the national economy. (Doc. 13, at 12-13). It is true that errors in determining the severity of a condition at stage two may indeed be harmless, so long as the ALJ finds one or more other conditions to be severe, proceeds with the five-step analysis, and adequately considers the non-severe impairment in evaluating the claimant's limitations. *See, e.g.*, *Salles*, 229 F. App'x at 145. In the instant case, however, the ALJ made no mention of these conditions, precluding the Court from determining whether the ALJ considered whether the conditions limit Nunez's ability to function in combination with Nunez's severe impairments.

In other words, in contrast with *Salles*, there is no indication that the ALJ considered these conditions in evaluating Nunez's limitations. See *Zuvich v. Astrue*, No. 3:07-CV-796, 2008 WL 4401019, at *6 (M.D. Pa. Sept. 23, 2008) (noting that the ALJ failed to "set forth the reasons for his decision" to discount reports that plaintiff was "frequently troubled by a lack of sleep brought on by her mental illness"); *see also, e.g.*, *Cerrone v. Astrue*, No. 10-CV-00114, 2010 WL 2697923, at *13 (W.D. Pa. July 7, 2010) (holding ALJ failed to articulate the reasons for "conclud[ing] that Plaintiff's sleep abnormalities were not limiting" where ALJ failed to include "some citation to the record to support the ALJ's statements").

### B. THE COURT DECLINES TO ADDRESS NUNEZ'S REMAINING ARGUMENTS

Because the Court recommends vacatur of the ALJ's decision based on his failure to address Nunez's sleep issues and headaches, it declines to address Nunez's remaining arguments, as "[a] remand may produce different results on these claims, making discussion of them moot." *Burns v. Colvin*, 156 F. Supp. 3d 579, 598 (M.D. Pa. 2016). The Court's evaluation of Nunez's additional contentions would be futile given that the ALJ's reconsideration of the these medically-documented conditions, in combination with her other impairments, may yield a different result.

## V. REMEDY

As a final matter, the Court addresses whether this case should be remanded to the Commissioner for further administrative proceedings or whether reversal and an award of benefits is appropriate. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the case for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100–01 (1991). However, the Third Circuit has advised that benefits should only be awarded where "the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000); *see e.g. Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). In this case, the appropriate measure is to remand for further development of the record.

## VI. CONCLUSION

Based on the foregoing, the Commissioner's decision to deny Nunez benefits and

income is **VACATED** and the case is **REMANDED** to the Commissioner to fully develop the record, conduct a new administrative hearing, and appropriately evaluate the evidence pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of Court is directed to **CLOSE** this case.

An appropriate order will follow.

**BY THE COURT:**

**Dated: August 1, 2020**

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**